UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CYNTHIA BULL, Administratrix of the Estate of
  ROBERT H. INGALSBE, V.,
                                        Plaintiff,

                        v.

ERIE COUNTY SHERIFF TIMOTHY B. HOWARD, both
  individually and in his official capacity,
THOMAS DIINA, Superintendent of the Jail Management
  Division of the Erie County Sheriff's Department,
NICHOLAS MILLIGAN, Erie County Sheriff's Deputy,
JACOB JANUCHOWSKI, Erie County Sheriff's Deputy,
C P ISCH, Erie County Sheriff's Deputy,
JUSTIN BAUER, Erie County Sheriff's Deputy,
NICHOLAS CONIGLIO, Erie County Sheriff's Deputy,
JOSEPH FALLETTA, Erie County Sheriff's Deputy,
JASON SMACZNIAK, Erie County Sheriff's Sergeant,
SLINAK, Erie County Sheriff's Sergeant,
JOHN/JANE DOES 1-10, Correctional Health Care Unit,
DEPARTMENT OF SHERIFF OF ERIE COUNTY
  CORRECTIONAL HEALTH CARE UNIT, and
SHC SERVICES, INC.,
                                        Defendants.

_____

**REPORT
and
RECOMMENDATION**

**22-CV-00766-JLS-LGF**

APPEARANCES:        PENBERTHY LAW GROUP, LLP
                    Attorneys for Plaintiff
                    BRITTANYLEE PENBERTHY, of Counsel
                    227 Niagara Street
                    Buffalo, New York  14201

                    CONNORS LLP
                    Attorneys for Defendant SHC Services, Inc.
                    MOLLIE CATHERINE McGORRY, of Counsel
                    1000 Liberty Building
                    Buffalo, New York  14202

## **JURISDICTION**

        This case was referred to the undersigned by Honorable John L. Sinatra, Jr. on

August 3, 2023, for all pretrial matters including a report and recommendation on

dispositive motions. (Dkt. 56).  The matter is presently before the court on Defendant

SHC Services, Inc.'s motion to dismiss (Dkt. 48), filed March 24, 2023.

## **BACKGROUND**

On October 10, 2022, Plaintiff Cynthia Bull ("Plaintiff" or "Bull"), as Administratrix

of the Estate of Robert H. Ingalsbe, V. ("Decedent" or "Ingalsbe"), commenced this

action asserting against Defendants claims under 42 U.S.C. § 1983 ("§ 1983") and New

York state law for deprivation of adequate medical care, negligent hiring, training and

supervision, failure to train, deprivation of Fourteenth Amendment substantive due

process, failure to treat, and municipal liability pursuant to *Monell v. Dept. of Social

Servs.*, 436 U.S. 658 (1978) ("*Monell*"), pertaining to Decedent's arrest on October 10,

2019, pretrial detainment at Erie County Holding Center ("ECHC"), and suicide attempt

on October 11, 2019, resulting in Decedent's death on October 12, 2019.  Defendants

to this action include then Erie County Sheriff Timothy B. Howard ("the Sheriff"),

Thomas Diina, Superintendent of the Jail Management Division of the Erie County

Sheriff's Department ("Diina"), Erie County Sheriff Deputies Nicholas Milligan

("Milligan"), Jacob Januchowski ("Januchowski"), C P Isch ("Isch"), Justin Bauer

("Bauer"), Nicholas A. Coniglio ("Coniglio"), and Joseph Falletta ("Falletta"), Erie County

Sheriff Sergeants Jason Smaczniak ("Smaczniak"), and Slimak ("Slimak"),[1] Department

of Sheriff of Erie County Correctional Health Care Unit ("CHCU") (together, "County

Defendants"), CHCU John/Jane Does 1-10 ("Doe Defendants"), and SHC Services, Inc.

("SHC" or "Defendant").

---

[1] Slimak is improperly named in the Complaint as "Slinak."

Prior to commencing the instant action, Plaintiff, on April 6, 2021, filed a complaint in New York Supreme Court, Erie County ("state court"), alleging similar state law claims against the County of Erie ("the County"), Erie County Sheriff's Office ("ECSO"), the Town of Grand Island ("Town"), and the Town of Grand Island Police Department ("Town Police") (together, "state court defendants") ("the state court action"). A ruling on a motion to dismiss and a stipulation filed in the state court action by New York State Supreme Court Justice Donna M. Siwek left the state court action pending only against the County. On September 9, 2022, Plaintiff filed in state court a motion for leave to file an amended complaint seeking to add to the state court action 57 named defendants and Erie County Sheriff's Deputies John Does 1-10, and to assert additional claims including pursuant to state law and § 1983 ("motion to amend"), as well as a proposed amended complaint ("PAC"). On September 19, 2022, while the motion to amend was pending in state court, the County removed the state court action to this court asserting federal question as the basis for subject matter jurisdiction because of the § 1983 federal claim asserted in the PAC. Accordingly, when removed to this court, the state court action, *Bull v. County of Erie*, 22-CV-704-JLS-LGF ("the removed action"), included only state claims asserted only against the County.

Motions to dismiss the instant action were filed on December 2, 2022, by Defendant CHCU (Dkt. 20) ("CHCU's motion"), on December 15, 2022, by Defendant Sheriff (Dkt. 26) ("Sheriff's motion"), and on January 6, 2023, by Defendants Diina, Milligan, Januchowski, Isch, Bauer, Coniglio, Falleta, Smaczniak, and Slimak ("Sheriff Department Defendants") (Dkt. 32) ("Sheriff Department Defendants' motion").

On March 24, 2023, SHC filed the instant motion to dismiss (Dkt. 48) ("Defendant's motion"), attaching the Declaration [of Mollie C. McGorry, Esq.][2] in Support of SHC Services, Inc.'s Motion to Dismiss (Dkt. 48-1) ("McGorry Declaration"), exhibits A through F (Dkts. 48-2 through 48-7) ("Defendant's Exh(s). __"), and the Memorandum of Law in Support of Defendant SHC Services Inc.'s Motion to Dismiss (Dkt. 48-8) ("Defendant's Memorandum").  On April 6, 2023, Plaintiff filed the Declaration [of Brittanylee Penberthy, Esq.] in Opposition to Defendants' [*sic*] Motion to Dismiss the Complaint (Dkt. 50) ("Penberthy Declaration"), and Plaintiff's Memorandum of Law in Opposition to Defendant SHC Services, Inc.'s Motions [*sic*] to Dismiss (Dkt. 50-1) ("Plaintiff's Memorandum").  On April 13, 2023, SHC filed the Reply Memorandum of Law in Further Support of Defendant SHC Services Inc.'s Motion to Dismiss (Dkt. 51) ("Defendant's Reply").

In a Report and Recommendation filed on March 20, 2024 in the removed action (22-CV-704-JLS-LGF, Dkt. 21), the undersigned recommended the removed action be remanded to state court based on a lack of subject matter jurisdiction because the state court had not ruled on the motion to amend prior to removal, such that the PAC was not the operative pleading and the federal claims in the PAC were not part of the removed action which contains only state law claims.  In a separate Report and Recommendation filed in the instant action on March 20, 2024 (Dkt. 59) ("the R&R"), the undersigned recommended granting CHCU's motion (Dkt. 20), and dismissing the instant action with prejudice as against CHCU based on Plaintiff's concession that CHCU is not a suable entity; alternatively, if the District Judge remands the removed action to state court, then

---

[2] Unless otherwise indicated, bracketed material has been added.

it was recommended that CHCU's motion (Dkt. 20) be denied based on the first-filed rule or, as a further alternative, granted based on the first-filed rule. The undersigned further recommended that if the District Judge remands the removed action to state court, then the Sheriff's motion (Dkt. 26) and the Sheriff Department Defendants' motion (Dkt. 32) should be denied based on the first-filed rule; alternatively, such motions (Dkts. 26 and 32) should be granted based on the first-filed rule. Oral argument on Defendant's motion was deemed unnecessary.

Based on the following, Defendant's motion should be GRANTED in part and DENIED in part.

## FACTS[3]

On August 20, 2019, in the Town of Grand Island, New York ("Grand Island" or "the Town"), Town Court, Judge Kennedy issued an arrest warrant ("the arrest warrant") pursuant to an Erie County District Attorney indictment charging Robert H. Ingalsbe, V. ("Ingalsbe" or "Decedent"), with violating New York Penal Law § 160.10 (robbery in the second degree), and § 155.25 (petit larceny), relative to an alleged incident occurring on September 23, 2018, and which charges the Sheriff Department Defendants allegedly knew were false. A known drug addict with a history of mental health issues, Ingalsbe, born October 12, 1985, became addicted to opioids and methadone as a minor, was previously arrested on drug charges by members of the Town of Grand Island Police Department ("the Police"), and the Erie County Sheriff's Department ("Sheriff's Department").

---

[3] Taken from the pleadings and motion papers filed in this action.

In the early morning hours of October 10, 2019, Ingalsbe was at the home of his mother, Cynthia Bull ("Bull"), located at 151 Fernwood Lane, Grand Island, New York ("Grand Island") where, at 5:30 A.M., he was arrested by Erie County Sheriff deputies on the arrest warrant.  While in transit to the Grand Island Police Station ("the police station") where he was to be arraigned on the criminal charges, Ingalsbe placed a call to his sister, Brittany Costa ("Costa"), who, at Ingalsbe's request, was at the police station upon Ingalsbe's arrival.  Costa informed the sheriff deputies present that Ingalsbe likely was high on drugs and was making statements consistent with suicidal ideation. Ingalsbe was held at the police station for about two and a half hours until he was transported to the Erie County Holding Center ("ECHC"), where the sheriff deputies who processed Ingalsbe's admission noted Ingalsbe's "need for detox, forensic evaluation and mental health evaluation," as well as "for special, medical housing," recommendations which were consistent with information on the "eJusticeNY Integrated Justice portal," reported in connection with a previous arrest of Ingalsbe, including that Ingalsbe had a substance abuse history.  Complaint ¶¶ 68-70.  Despite these observations and the admitting deputies' recommendation, Plaintiff was housed in a cell on "Bravo Long,"[4] where he was not monitored and did not receive the recommended professional medical treatment, forensic evaluation, or detox treatment that would have been available in medical housing.  *Id.* ¶¶ 71-72.

During the time relevant to this action, Defendant SHC, pursuant to a contract with the County, provided medical care to those detained at ECHC.  On October 10, 2019, Ingalsbe, after being admitted to ECHC and assigned to his cell on Bravo Long,

---

[4] Plaintiff does not allege what type of housing is in "Bravo Long."

engaged in a telephone call with Costa at 10:11 A.M., and with Bull at 6:49 P.M., and another call with Bull at 10:16 A.M. on October 11, 2019.   During each call, Ingalsbe expressed suicidal ideation.  Also mentioned during Ingalsbe's second call with Bull was that Ingalsbe has "children."  Complaint ¶ 84.  *See also* Complaint ¶ 132 (alleging in support of Plaintiff's Fifth Claim asserting a violation of substantive due process that Plaintiff (Bull) and "[D]ecedent's children" were "deprived of their constitutional right of familial relationship with Plaintiff's [D]ecedent, Ingalsbe.").

At 12:27 P.M. on October 11, 2019, Defendant Milligan who, along with Defendant Smaczniak, was assigned to Bravo Long, spoke with Ingalsbe while conducting a tour of Bravo Long.  At 12:45 P.M., Defendant Januchowski conducted a tour of Bravo Long during which Januchowski observed that Ingalsbe had tied a sheet to the bars of his cell and hanged himself.  Januchowski radioed for a medical emergency and shouted for assistance.  Several sheriff deputies rendered medical attention in an attempt to revive Ingalsbe who was transported by ambulance to Buffalo General Hospital where Ingalsbe died on October 12, 2019.

On October 25, 2019, Bull was appointed administratrix of Decedent's estate. Bull commenced this action as the representative of Decedent's estate.

## DISCUSSION

1. **Motion to Dismiss**

The Complaint contains six claims for relief, five of which are asserted against Defendant SHC[5] including § 1983 claims for deprivation of medical care, Complaint,

---

[5] The claims asserted against SHC are also asserted against other Defendants who have not similarly moved to dismiss such claims.

First Cause of Action ("First Claim"), municipal liability based on a failure to train, *id*., Fourth Cause of Action ("Fourth Claim"), and a violation of Fourteenth Amendment substantive due process, *id*., Fifth Cause of Action ("Fifth Claim"), and state law claims for negligent hiring, training, and supervision, *id*., Third Cause of Action ("Third Claim"), and for failure to treat, *id*., Sixth Cause of Action ("Sixth Claim").[6]  Defendant's motion seeks to dismiss the claims asserted against it in the Complaint pursuant to Fed.R.Civ.P. 12(b)(1) ("Rule 12(b)(1)") for lack of jurisdiction, as well as pursuant to Fed.R.Civ.P. 12(b)(6) ("Rule 12(b)(6) for failure to state a claim for which relief can be granted.

In moving for dismissal of all claims, SHC argues Plaintiff lacks standing to pursue the Fourth Claim based on the alleged damages which are sought by Plaintiff personally, rather than on Decedent's behalf, Defendant's Memorandum at 5-6, the Sixth Claim sounds in medical malpractice and should be dismissed as untimely filed, *id*. at 6-7, Plaintiff has failed to allege SHC is a state actor as required for the § 1983 claims, *id*. at 8, and the First, Third, Fourth, Fifth, and Sixth Claims fail to plausibly state a claim for which relief can be granted, *id*. at 9-18.  SHC alternatively argues the Complaint should be dismissed based on the so-called "first-filed" rule.  *Id*. at 18-20.

In opposition, Plaintiff argues the Fourth Claim asserting municipal liability under § 1983 based on failure to train is sufficiently pleaded and the asserted damages are not personally sought by Plaintiff, Plaintiff's Response at 4-5, the Sixth Claim for failure to treat is not time-barred, *id*. at 6-7, SHC can be found liable as a state actor for purposes of § 1983 liability, *id*. at 7, the Complaint sufficiently states claims for

---

[6] The Second Cause of Action alleging a § 1983 claim for municipal liability pursuant to *Monell*, is asserted only against Defendant Sheriff.  Complaint, Second Cause of Action.

constitutional violations of Decedent's right to adequate medical care and treatment, *id*. at 8-9, and Decedent's constitutional violations were caused by SHC's policies or customs, *id*. at 9-10. Alternatively, Plaintiff maintains dismissal of any claims is premature until various Defendants are deposed. *Id*. at 11. As a further alternative, Plaintiff argues the instant Complaint is not barred by the first-filed rule. *Id*. at 11-12.

In further support of dismissal, SHC repeats that SHC lacks standing for the Fourth Claim asserting municipal liability based on failure to train, Defendant's Reply at 1-2, the § 1983 claims should be dismissed because SHC is not a state actor, *id*. at 3, and even if SHC is a state actor, the § 1983 claims must be dismissed because they are insufficiently pleaded, *id*. at 3-7, the Third Claim asserting under state law negligent hiring, training and supervision should be dismissed for failure to state a claim, *id*. at 7, and the Sixth Claim for failure to treat is duplicative of the First Claim and also fails to state a claim. *Id*. at 7-8. Alternatively, SHC urges the court to reject Plaintiff's request for discovery prior to deciding Defendant's motion. *Id*. at 9-10.

## 1.    First-Filed Rule

At the outset, the court addresses SHC's alternative argument, Defendant's Memorandum at 18-19, that the so-called "first-filed" rule requires dismissal of the Complaint insofar as its claims are duplicative of the claims pending in the removed action, 22-CV-704-JLS-LGF. In opposition, Plaintiff argues the first-filed rule is not applicable because the removed action, at present, only contains claims asserted against the County which is not a defendant to the instant action. Plaintiff's Response at 11-12. SHC has not replied in further support of this argument.

It is "the well-settled principle in this Circuit that "'[w]here there are two competing lawsuits, the first suit should have priority, absent the showing of balance of convenience . . . or . . . special circumstances . . . giving priority to the second.'" *First City Nat. Bank & Tr. Co. v. Simmons*, 878 F.2d 76, 79 (2d Cir. 1989) (quoting *Motion Picture Lab. Technicians Loc. 780 v. McGregor & Werner, Inc.,* 804 F.2d 16, 19 (2d Cir.1986) (quoting *Fort Howard Paper Co. v. William D. Witter, Inc.,* 787 F.2d 784, 790 (2d Cir.1986))). Assuming, *arguendo*, the removed case qualifies as such a "first-filed" case for purposes of the rule, in a Report and Recommendation filed March 20, 2024, 22-CV-704-JLS-LGF, Dkt. 21, the undersigned recommended the removed case be remanded to state court for lack of subject matter jurisdiction. Should the district judge agree with the recommendation that the removed action be remanded to state court for lack of subject matter jurisdiction, the first-filed rule would not bar the instant action because "the first-to-file doctrine applies to concurrent federal litigation—not concurrent state/federal litigation." *Radioactive, J.V. v. Manson*, 153 F. Supp. 2d 462, 473 (S.D.N.Y. 2001). Accordingly, in such event, Defendant SHC's motion should be DENIED with regard to SHC's alternative argument.

Should the District Judge disagree with the recommendation that the removed action be remanded to state court, the necessary implication will be that the motion to file an amended complaint pending in the removed action was granted with federal claims asserted against additional defendants, including all of the Defendants named in the instant action. Under such circumstances, there would be no merit to Plaintiff's argument, Plaintiff's Memorandum at 11-12, that the first-filed rule does not apply because the removed action is pending only against the County and thus is separate

and distinct from the instant action and as such would not constitute an action to which the first-filed rule would apply.  The court therefore considers whether the first-filed rule would then bar the instant action.

The "relevant benchmark" to determine whether an action originally filed in federal court or an action filed in state court and removed to federal court is the first filed action is the state court filing date for the state court action.  *See About.com, Inc. v. Aptimus, Inc.*, 2001 WL 503251, at *2 (S.D.N.Y. May 11, 2001) (citing *800–Flowers, Inc. v. Intercontinental Florist, Inc.,* 860 F.Supp. 128, 131 n. 1 (S.D.N.Y.1994) (noting that where a state court action is removed to federal court, the state court filing date is the benchmark for the purposes of the first filed rule)).  In the instant case, the removed action was commenced in state court on April 6, 2021, more than 18 months prior to the federal action which was commenced on October 10, 2022.  Accordingly, should the District Judge disagree with the initial recommendation in the removed action, *i.e.*, the Report and Recommendation filed March 20, 2024, (22-CV-704-JLS-LGF, Dkt. 21), that the removed action be remanded to state court for want of jurisdiction such that the first-filed rule does not apply, then there is no merit to Plaintiff's argument that Defendant's motion should be denied based on the first-filed rule.  Under such circumstances, Defendant's motion should be GRANTED with the instant action dismissed based on the first-filed rule.

### 3.    Jurisdiction

Regarding Defendant's argument that this court is without jurisdiction over Plaintiff's Fourth Claim alleging § 1983 municipal liability based on a failure to train, it is basic that district courts lack subject matter jurisdiction if the suit at issue lacks a federal

statutory or constitutional basis for adjudication by the court. *Cortlandt St. Recovery Corp. v. Hellas Telecommunications, S.à.r.l.*, 790 F.3d 411, 416-17 (2d Cir. 2015) ("A district court properly dismisses an action under Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction if the court "lacks the statutory or constitutional power to adjudicate it. . . ."). A plaintiff has the burden to demonstrate the court has subject matter jurisdiction over the suit, *Cooke v. United States*, 918 F.3d 77, 80 (2d Cir. 2019) ("The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." (internal quotation omitted)), and the court may consider facts outside the record to determine its jurisdiction. *Id.* ("To resolve jurisdictional issues, we may consider affidavits and other materials beyond the pleadings, but we cannot rely on conclusory or hearsay statements contained in the affidavits.").

SHC argues Plaintiff is without standing to pursue the Fourth Claim alleging § 1983 municipal liability based on failure to train because Plaintiff, *i.e.*, Decedent's mother, seeks damages for personal expenses and various damages related to her loss of companionship incurred in her individual capacity. Defendant's Memorandum at 5-6. In opposition, Plaintiff argues that the instant action was commenced on behalf of Decedent, and not on behalf of herself individually, and even if Plaintiff cannot recover damages for personal expenses and loss of companionship, the request for such damages is contained in a single paragraph in the Complaint, ¶ 127, and should not prevent the recovery for the compensatory damages Plaintiff seeks based on Defendants' alleged failure to adequately train personnel so as to prevent Decedent's suicide as alleged in § 128 of the Complaint. Plaintiff's Response at 4-5. In reply, SHC

argues Plaintiff lacks standing to assert the Fourth Claim because she seeks damages in her individual capacity.  Defendant's Reply at 1-2.

Ingalsbe died without having an opportunity to assert his § 1983 *Monell* liability claim based on a failure to train.  "When a party dies before pursuing his cause of action under § 1983, the claim survives for the benefit of his estate if applicable state law creates a right of survival."  *Barrett v. United States*, 689 F.2d 324, 331 (2d Cir. 1982) (citing *Brooks v. Flagg Bros., Inc.*, 553 F.2d 764, 768 n. 7 (2d Cir. 1977), *rev'd on other grounds*, 436 U.S. 149 (1978)).  Under New York law, a § 1983 claim survives a party's death "and may be asserted by his personal representative."  *Id.* (citing N.Y. Est. Powers & Trusts L. § 11–3.2(b) (permitting a personal representative to bring an action for an injury to a decedent's person or property).  Here, Ingalsbe's personal representative is Cynthia Bull in her capacity as administratrix of Ingalsbe's estate.  *Id.* (citing N.Y. E.P.T.L. § 11-2.13 ("A personal representative is a person who has received letters to administer the estate of a decedent.").  Bull thus has the right to assert claims on behalf of Decedent's estate.

Under New York Estates, Powers & Trusts Law (E.P.T.L.) § 11–3.2(b) ("§ 11-3.2(b)"), the administrator of a decedent's estate can sue for any cause of action that accrued in favor of the decedent before his death.  There are two types of statutory causes of action for damages in a wrongful death case.  Under E.P.T.L. § 5–4.3(a) ("§ 5-4.3(a)"), a decedent's surviving family members can recover "fair and just compensation for the pecuniary injuries resulting from the decedent's death[,] . . . the reasonable expenses of medical aid, nursing and attention incident to the injury causing death[,] and the reasonable funeral expenses of the decedent."  *See also Hollingsworth*

*v. Roseland Wake Park, LLC*, 2019 WL 6455605, at (W.D.N.Y. Nov. 29, 2019) (citing *Smith v. Hub Manufacturing, Inc.*, 634 F. Supp. 1505, 1511-12 (N.D.N.Y. 1986) (holding that under E.P.T.L. § 5-4.3(a), the plaintiff parents could recover medical, funeral, and burial expenses, as well as expenses relating to their travel and the decedent's future financial support, but noting that "damages for the loss of a child's services during minority are available, but damages for loss of affection are not.")).

The expenses that can be recovered under § 5-4.3(a), however, are "fair and just compensation for the pecuniary injuries resulting from the decedent's death to the persons for whose benefit the action is brought."  Significantly, "the person(s) for whose benefit the action is brought include decedent's statutory *distributees* . . ." *Manuel v. Hwa Jung Son*, 110 N.Y.S.3d 505, at * 2 (S.Ct. Bronx Cnty., 2018) (unpublished) (italics in original), which, as relevant, are described as "the persons entitled thereto under 4-1.1 and 5-4.5, except that where the decedent is survived by a parent or parents and a spouse and no issue, the parent or parents will be deemed to be the distributees for the purposes of this section."  N.Y. E.P.T.L. 5-4.4(a).

Here, the Complaint alleges the Decedent was survived by "children."  Complaint ¶ 84 (referencing portion of telephone conversation with Ingalsbe where Plaintiff, in response to Ingalsbe's statement that "I'm on the verge of just ending it," states, "That's not an option Bob.  You have children."); and ¶ 132 (alleging in support of Plaintiff's Fifth Claim asserting a violation of substantive due process that Plaintiff and "[D]ecedent's children" were "deprived of their constitutional right of familial relationship with Plaintiff's [D]ecedent, Ingalsbe.").  Accordingly, any damages recovered for Decedent's wrongful death would be for the benefit of Decedent's children.  Additionally, insofar as Plaintiff

seeks to recover funeral and burial expenses incurred in connection with Ingalsbe's death, § 5-4.3(a) allows for the recover of "reasonable expenses of medical aid, nursing and attention incident to the injury causing death and the reasonable funeral expenses of the decedent, . . ." but specifically restricts the recovery of such expenses to those "paid by the distributees. . . ."  The Complaint does not allege that Decedents' children[7] paid for any of Ingalsbe's funeral and burial expenses, and if such expenses were personally paid by Bull, then recovery for such expenses is not allowed.

Further, as Plaintiff argues, Plaintiff's Response at 5, Plaintiff not only seeks to recover "funeral and related burial expenses," but also "loss of the life-long love, companionship, comfort, support, society, care, and sustenance of Plaintiff's decedent, Ingalsbe, and will continue to be so deprived for the remainder of her life," Complaint ¶ 127, as well as "compensatory damages under 42 U.S.C. § 1983." *Id*. ¶ 128.  "Under New York law, a parent may not recover damages for loss of consortium resulting from a child's death or injury, but '[a] parent may recover for loss of services of a child upon a proper showing of the value of [the] lost services.'"  *I.M. v. United States*, 362 F. Supp. 3d 161, 205-06 (S.D.N.Y. 2019) (quoting *Santoro ex rel. Santoro v. Donnelly*, 340 F.Supp.2d 464, 492-93 (S.D.N.Y. 2004) (further citations omitted)).

Thus, with regard to the Fourth Claim alleging municipal liability under § 1983 based on a failure to train, Plaintiff may not recover under New York law for any loss of consortium based on the loss of her son, nor may Decedent's children recover for loss of consortium of their father.  *See Gonzalez v. New York City Housing Authority*, 572 N.E.2d 598, 600-01 (N.Y. 1991) (recovery for wrongful death claim is restricted to

---

[7] The court notes the Complaint does not indicate how many children Ingalsbe had, nor the ages of such issue, but given Ingalsbe died on his 34th birthday, said children were likely infants.

pecuniary injuries or injuries measurable by money, and recovery for grief, loss of society, affection, and consortium is precluded) (citing cases).  *See also Morley v. Am. Airlines, Inc. (In re Air Crash at Belle Harbor, N.Y.)*, 508 F. Supp.2d 244, 249 (S.D.N.Y. 2007) ("New York does not allow recovery by a parent for the loss of consortium of a child." (citing *Gilbert v. Stanton Brewery*, 67 N.E.2d 155, 157 (N.Y. 1946), and *Devito v. Opatich*, 627 N.Y.S.2d 441, 442 (2d Dep't 1995)); and *De Angelis v. Lutheran Med. Ctr.*, 449 N.E.2d 406, 407 (N.Y. 1983) (New York does not recognize a cause of action for loss of parental consortium).  The Second Circuit, however, has instructed that "limitations in a state survival statute have no application to a section 1983 suit brought to redress a denial of rights that caused the decedent's death," such that loss-of-life damages are recoverable in a § 1983 action.  *McFadden v. Sanchez*, 710 F.2d 907, 911 (2d Cir. 1983).

Specifically, courts have consistently ruled that when a violation of federal rights protected by § 1983 causes the decedent's death, state laws that either extinguish the survival action or bar recovery for loss of life, effectively abate a § 1983 claim of deprivation of life, are inconsistent with § 1983, and warrant application of a federal rule of decision pursuant to § 1988.[8]  *Banks ex rel. Banks v. Yokemick*, 177 F. Supp.2d 239, 250 (S.D.N.Y. 2001).  "The right to enjoyment of life without its unlawful curtailment has an intrinsic worth that necessarily exceeds the dollars-and-cents value of the decedent to his beneficiaries."  *Id*. at 249.  Section "1983 itself contains no provision

---

[8] Pursuant to 42 U.S.C. § 1988, where there is an inconsistency between state law and federal law regarding damages available for a claim pursuant to § 1983, whichever law is more responsive to the need created by the impaired federal right applies.  *See Moor v. County of Alameda*, 411 U.S 693, 703-04 (1973) ("Properly viewed, then, § 1988 instructs federal courts as to what law to apply in causes of actions arising under federal civil rights acts."). .

defining specific elements of recoverable damages." *Banks ex rel. Banks v. Yokemick*, 177 F. Supp.2d 239, 247 (S.D.N.Y. 2001). It has been long established, however, that "[t]he 'basic purpose' of § 1983 damages is 'to compensate persons for injuries that are caused by the deprivation of constitutional rights.'" *Townes v. City of New York*, 176 F.3d 138, 147 (2d Cir. 1999) (quoting *Carey v. Piphus*, 435 U.S. 247, 253-54 (1978)). "The type and amount of such damages 'is ordinarily determined according to principles derived from the common law of torts.'" *Id*. at 147-48 (quoting *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 306 (1986)). The main principle from the common law of torts that serves to define and limit compensatory damages in § 1983 claims is the doctrine of proximate causation. *See*, *e.g.*, *id*. at 146. Yet, "[t]o recover compensatory damages under Section 1983, a plaintiff must prove that his injuries were proximately caused by a constitutional violation." *Gibeau v. Nellis*, 18 F.3d 107, 110 (2d Cir. 1994).

In this case, the potential constitutional violations include Defendants' erroneously placing Ingalsbe in a cell on Bravo Long instead of in a cell located in ECHC's special, medical housing unit where, based on his history of substance abuse and mental health concerns, Ingalsbe would have been monitored more closely, as well as Defendants' alleged failure to timely conduct rounds of Bravo Long, both actions which potentially would have avoided Decedent's suicide attempt and ultimately his death. Should Plaintiff produce at trial competent evidence establishing that such wrongful conduct arose to a violation of Decedent's constitutional rights, and also was the proximate cause of Decedent's death, Plaintiff then may be eligible to recover compensatory damages under § 1983 which would be payable into Decedent's estate for the benefit of Decedent's distributees, *i.e.*, Decedent's children. *Manuel*, 110

N.Y.S.3d 505, at *2 (citing N.Y. E.P.T.L. §§ 4-1.1(4), 5-4.3(a), and 5-4.4(a)); *Est. of Mauricio Jaquez v. Flores*, 2016 WL 1084145, at *5 (S.D.N.Y. Mar. 17, 2016) (quoting *McKee v. Colt Elecs. Co.*, 849 F.2d 46, 50 (2d Cir. 1988) ("wrongful death damages are limited to fair compensation for the pecuniary injuries resulting from the decedent's death to the persons for whose benefit the action is brought.").

Nevertheless, with regard to pecuniary or compensatory damages, Plaintiff has not alleged any facts establishing Decedent's death resulted in a loss to Plaintiff of any services of value. *See Manuel*, 110 N.Y.S.3d 505 at * 3-4 (concluding adult decedent's father, with whom the decedent had scant contact or interaction throughout decedent's life, could not share in any recovery for compensatory damages because there was no indication the decedent was predisposed to provide his father with support or services, in contrast to the decedent's mother to whom the decedent regularly and voluntarily provided financial support which the mother could reasonably anticipate would have continued but for the decedent's death, such that the mother was permitted to recover compensatory damages). *See cf. Est. of Maurice Jaquez*, 2016 WL 1084145, at * 5 ("Children can, however, 'recover for the pecuniary loss suffered as a result of the lost nurture, care, and guidance they would have received if the parent had lived, . . .'" (quoting *McKee* 849 F.2d at 50, and *Pub. Adm'r of Queens County ex rel. Estate & Beneficiaries of Guzman v. City of New York*, 2009 WL 498976, at *5 (S.D.N.Y. Feb. 24, 2009))).

Accordingly, Defendant's motion to dismiss should be, on this ground, GRANTED in part and DENIED in part.

**4.    Failure to State a Claim**

Insofar as Plaintiff moves to dismiss claims pursuant to Rule 12(b)(6), the

Supreme Court requires application of "a 'plausibility standard,' which is guided by '[t]wo

working principles.'"  *Harris v. Mills*, 572 F.3d 66, 71-72 (2d Cir. 2009) (citing *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and quoting *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009)).  "First, although 'a court must accept as true all of the allegations

contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions,' and

'[t]hreadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice.'"  *Harris*, 572 F.3d at 72 (quoting *Iqbal*, 556 U.S.

at 678).  "'Second, only a complaint that states a plausible claim for relief survives a

motion to dismiss,' and '[d]etermining whether a complaint states a plausible claim for

relief will . . . be a context-specific task that requires the review court to draw on its

judicial experience and common sense.'"  *Id*. (quoting *Iqbal*, 556 U.S. at 679).  "To

survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted

as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678

(quoting *Twombly*, 550 U.S. at 570).  The factual allegations of the complaint "must be

enough to raise a right to relief above the speculative level on the assumption that all

the allegations in the complaint are true."  *Twombly*, 550 U.S. at 570.  Simply put,

unless the plaintiff pleads "enough facts to state a claim that is plausible on its face" so

as to "nudge[ ] their claims across the line from conceivable to plausible, [the] complaint

must be dismissed."  *Twombly,* 550 U.S. at 570.

In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court looks to the

four corners of the complaint and is required to accept the plaintiff's non-conclusory

allegations as true and to construe those allegations in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008) (court is required to liberally construe the complaint, accept as true all factual allegations in the complaint, and draw all reasonable inferences in the plaintiff's favor). In ruling on a Rule 12(b)(6) motion to dismiss, "district courts 'may review only a narrow universe of materials,' which includes 'facts stated on the face of the complaint, documents appended to the complaint or incorporated in the complaint by reference, ... matters of which judicial notice may be taken,' as well as 'document[s] not expressly incorporated by reference in the complaint [that are] nevertheless 'integral' to the complaint.'" *Clark v. Hanley*, 89 F.4th 78, 93 (2d Cir. 2023) (quoting *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (brackets in *Clark*). "[A] matter may be deemed 'integral' to the complaint 'when the complaint relies heavily upon its terms and effect.'" *Id*. at 559 n. 18 (quoting *Palin v. New York Times Company*, 940 F.3d 804, 811 (2d Cir. 2019)).

### A.    § 1983 Liability

Plaintiff's First, Fourth, and Fifth Claims are asserted as violations of § 1983 ("the § 1983 claims"). Section 1983 permits imposing civil liability upon persons who, acting under color of state law, deprive an individual of rights, privileges, or immunities secured by the Constitution and laws of the United States. *Patterson v. County of Oneida, New York*, 375 F.3d 206, 225 (2d Cir. 2004) (quoting 42 U.S.C. § 1983). Section 1983, however, "'is not itself a source of substantive rights.'" *Id*. (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)). Rather, § 1983 "merely provides 'a method for vindicating federal rights elsewhere conferred' . . . ." *Id*. The elements of a § 1983 claim

include (1) the deprivation of a federal constitutional or statutory right, and (2) by a person acting under color of state law.  *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005) (citing *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)).  Thus, "[t]he first step in any such claim is to identify the specific constitutional right allegedly infringed." *Id.* (citing *Graham v. Connor*, 490 U.S. 386, 394 (1989); and *Baker*, 443 U.S. at 140).  Here, Plaintiff's § 1983 claims, including the First Claim for deprivation of adequate medical care, the Fourth Claim for failure to train, and the Fifth Claim for interference with familial relationships, assert deprivation of due process in violation of the Fourteenth Amendment.

Defendant argues in support of dismissal of each of Plaintiff's three § 1983 claims, *i.e.*, the First, Fourth, and Fifth Claims, that Defendant is not a state actor as required for § 1983 liability, Defendant's Memorandum at 8, that Plaintiff fails to allege Defendant acted with deliberate indifference as required for the First Claim asserting deprivation of adequate medical care, *id*. at 9-11, as well as the Fourth Claim asserting failure to train, *id*. at 11-12, and § 1983 does not provide a due process claim for interference with familial relationships as asserting in the Fifth Claim.  *Id*. at 13-14. Preliminarily, "[t]o state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States."  *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)). Further, "[b]ecause the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must

first establish that the challenged conduct constitutes state action." *Fabrikant v. French*, 691 F.3d 193, 206 (2d Cir. 2012) (internal quotation marks omitted) (quoting *Flagg v. Yonkers Sav. & Loan Ass'n,* 396 F.3d 178, 186 (2d Cir. 2005)).  The court addresses whether each of Plaintiff's § 1983 claims meets these requirements.

### 1.    State Actor

Defendant argues Plaintiff has failed to allege any facts establishing SHC and its employees are state actors as required for § 1983 liability.  Defendant's Memorandum at 8.  In opposition, Plaintiff argues that although SHC is a private entity, by contracting to provide medical care to inmates at ECHC, a local municipal facility, SHC became a municipal actor and can be liable under § 1983 for a constitutional deprivation caused by an injury that is attributed to an official policy or custom of the municipality.  Plaintiff's Response at 7.  In reply, Defendant maintains that the Complaint's single, conclusory allegation that SHC is a "public actor[ ]," is unsupported by any plausible facts and thus is insufficient to state a claim for § 1983 liability.  Defendant's Reply at 3 (quoting Complaint ¶ 101).

"A plaintiff proceeding pursuant to 42 U.S.C. § 1983 must allege that a right secured by the Constitution or laws of the United States was violated by a person acting under the color of state law or a state actor."  *McCray v. New York*, 2023 WL 7002555, at *3 (W.D.N.Y. Oct. 24, 2023) (citing *West v. Atkins*, 487 U.S. 42, 48-49 (1988)), *report and recommendation adopted*, 2023 WL 9002815 (W.D.N.Y. Dec. 28, 2023).  Although private entities generally are not state actors and thus not subject to § 1983, a private party "acts under color of state law" and may incur liability under section 1983 "when the private actor is a willful participant in joint activity with the State or its agents," *Betts v.*

*Shearman*, 751 F.3d 78, 85 (2d Cir. 2014) (citations and internal quotation marks

omitted), or "'acts together with state officials or with significant state aid,'" *Abdullahi v.*

*Pfizer, Inc.*, 562 F.3d 163, 188 (2d Cir. 2009) (quoting *Kadic v. Karadzic*, 70 F.3d 232,

245 (2d Cir. 1995)).  The actions of a private entity are attributable to the state when

there exists "such a close nexus between the state and the challenged action that the

state is responsible for the specific conduct of which the plaintiff complains." *Fabrikant*

*v. French*, 691 F.3d 193, 207 (2d Cir. 2012) (internal quotation marks and citation

omitted).  The Second Circuit employs the following tests: "'(1) the entity acts pursuant

to the 'coercive power' of the state or is 'controlled' by the state ("the compulsion test");

(2) when the state provides 'significant encouragement' to the entity, the entity is a

'willful participant in joint activity with the state,' or the entity's functions are 'entwined'

with state policies ("the joint action test" or "close nexus test"); or (3) when the entity

'has been delegated a public function by the state,' ("the public function test")."" *Sybalski*

*v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2014) (quoting

*Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n*, 531 U.S. 288, 296 (2001)).

Either when acting in their official capacity or exercising responsibilities pursuant

to state law, public employees generally act under color of state law.  *McCray*, 2023 WL

7002555, at * 3 (citing *West*, 487 U.S. at 50).  As such, not only do "physicians

employed by the state to provide medical services to state prison inmates act under

color of state law and are considered state actors when providing medical treatment to

inmates," *id*. at 54-55, but it is irrelevant "that the state employed the physician pursuant

to a contractual arrangement that differs from public employment: '[c]ontracting out

prison medical care does not relieve the State of its constitutional duty to provide

adequate medical treatment to those in custody, and it does not deprive the State's prisoners of the means to vindicate their [constitutional] rights.'" *Id.* (quoting *West*, 487 U.S. at 56). Accordingly, a physician who provides essential medical care to incarcerated individuals pursuant to a contract and in fulfillment of the state's obligation to provide such care also acts under color of state law. *Id.* A private actor who acts pursuant to a contract with the state, however, "can only be a willful participant in joint activity with the State or its agents if the two share some common goal to violate the plaintiff's rights." *Betts*, 751 F.3d at 85. (citation and internal quotation marks omitted).

In the instant case, SHC, by providing medical care to detainees at ECHC, "preforms a rule traditionally within the exclusive prerogative of the state" and could, in this context, be found to be "the functional equivalent of the municipality." *Bess v. City of New York*, 2013 WL 11164919, at *2 (S.D.N.Y. Mar. 19, 2013) (citing cases). A thorough reading of the Complaint, however, establishes the only factual allegation suggesting SHC is a state actor for purposes of § 1983 liability is found in ¶ 25 alleging "[u]pon information and belief" that SHC contracted to provide services within New York State including medical care to Decedent at ECHC. Further, Plaintiff does not allege with whom SHC contracted to provide medical services to detainees housed at ECHC. *See Smith v. Benson*, 2016 WL 11817187, at * 2 (W.D.N.Y. Mar. 21, 2016) (concluding, in considering a motion to amend, that the plaintiff detainee plausibly alleged the jail's medical provider was a state actor "by virtue of its contract with the [jail]," a copy of which was attached to the proposed amended complaint) (citing *Sykes v. McPhillips*, 412 F.Supp.2d 197, 204 n.1 (N.D.N.Y. 2006) ("If there was an express contract to provide medical care to prisoners, state actor status would be conferred."); and

*Sepolveda v. Armor Corr'l Health*, 2015 WL 6550623, at * 3 n.2 (E.D.N.Y. Oct. 28, 2015) ("As the entity with which the Jail contracted to provide medical services to its prisoners, [defendant] was acting under color or state law for purposes of Section 1983 with respect to its duties in rendering such medical services to plaintiff.")).

Accordingly, Plaintiff has failed to sufficiently allege SHC, when providing medical care to detainees at ECHC, acted pursuant to a contract with ECHC so as to be considered a state actor for purposes of § 1983 liability and Defendant's motion should be GRANTED with regard to to Plaintiff's § 1983 claims as asserted against SHC, *i.e.*, the First, Fourth, and Fifth Claims.  Alternatively, assuming, *arguendo*, the Complaint sufficiently alleges SHC is a state actor by virtue of a contract between SHC and the County for purposes of § 1983 liability, then the Complaint still fails to state any valid § 1983 claim against SHC based on actions taken pursuant to the required official policy (First and Fouth Claims"), or because such claim is not recognized under § 1983 (Fifth Claim").  *See* Discussion, *infra*., at 36-37.

## 2.    First Claim - Deprivation of Adequate Medical Care

Defendant argues in support of dismissal of Plaintiff's First Claim alleging deprivation of adequate medical care in violation of § 1983 that the Complaint fails to allege the claim's two required elements including that Plaintiff had a serious medical need toward which SHC acted with deliberate indifference, Defendant's Memorandum at 9, and that SHC was personally involved in the alleged unlawful conduct.  *Id*. Further, because Plaintiff's First Claim seeks to impose § 1983 liability against SHC pursuant to *Monell*, Plaintiff must also allege both a constitutional deprivation, as well as an official policy or custom that caused the deprivation.  *Id*. at 9-11.  In opposition,

Plaintiff argues the Complaint sufficiently alleges Decedent presented with serious substance abuse and mental health concerns, toward which Defendant SHC acted with recklessness by failing to use reasonable care to mitigate the risks posed by such condition.  Plaintiff's Response at 8-9.  In further support of dismissal, Defendant argues the Complaint contains only conclusory facts in attempting to allege an SHC agent was responsible for treating Decedent but that, to the contrary, the Complaint alleges Decedent's cell assignment at ECHC, which was not in the special medical housing unit, was made by Defendant Sheriff Deputies rather than by an SHC employee. Defendant's Reply at 4.

Preliminarily, Plaintiff's First Claim challenges the conditions of Decedent's confinement while being held at the ECHC.  Such claims by or on behalf of a pretrial detainee are evaluated under the Fourteenth Amendment's Due Process Clause, rather than the Eighth Amendment's Cruel and Unusual Punishments Clause.  *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2016) (holding "[a] pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eighth Amendment.").  "A pretrial detainee may establish a § 1983 claim for allegedly unconstitutional conditions of confinement by showing that the officers acted with deliberate indifference to the challenged conditions."  *Id*. (citing *Benjamin v. Fraser*, 343 F.3d 35, 49 (2d Cir. 2003), *overruled on other grounds by Caiozzo v. Koreman*, 581 F.3d 63, 70 (2d Cir. 2009)).  "This means that a pretrial detainee must satisfy two prongs to prove a claim, an "objective prong" showing that the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process,

and a "subjective prong"—perhaps better classified as a "*mens rea* prong" or "mental element prong"—showing that the officer acted with at least deliberate indifference to the challenged conditions." *Id*.

Courts within the Second Circuit have held that substance abuse and mental health concerns such as those with which Decedent allegedly presented upon being arrested and at his arrival at ECHC constitute a sufficiently serious medical condition for purposes of the objective prong of a Fourteenth Amendment deprivation of medical care claim. *See Iacovangelo v. Correctional Medical Care, Inc*., 624 Fed.Appx. 10, 12 (2d Cir. 2015) (holding the plaintiff pretrial detainee's need for medically supervised drug detoxification was an objectively serious medical condition, and quoting *Caiozzo*, 51 F.3d at 69 ("finding, with respect to the objective prong, that 'there is no dispute that Caiozzo had a serious medical condition' where he suffered from alcohol withdrawal")). Even assuming, *arguendo*, that Defendant SHC acted with deliberate indifference toward Decedent's serious medical need, as required to establish the subjective prong of the § 1983 failure to treat claim, Plaintiff's First Claim fails because Plaintiff has not alleged any employee of SHC acted pursuant to the requisite municipal policy or custom.

Specifically, the First Claim is alleged pursuant to § 1983, for which Plaintiff seeks to assert municipal liability against SHC pursuant to *Monell*.  A municipality "may not be held liable for the actions of its employees or agents under a theory of *respondeat superior*," but, rather, a municipality "is liable only when its policy or custom inflicts the injury upon the plaintiff."  *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983) (citing *Monell, supra,* 436 U.S. at 694).  Official municipal policy includes "the

decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick*, 563 U.S. at 61.  To hold a municipality liable under § 1983 for the unconstitutional actions of its employees thus requires a plaintiff "to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right."  *Batista*, 702 F.2d 397.  Additionally, "[t]o survive a motion to dismiss, the plaintiff 'cannot merely allege the existence of a municipal policy or custom, but must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists.'"  *Rowles v. Doe*, 558 F.Supp.3d 66, 71 (W.D.N.Y. 2021) (quoting *Triano v. Town of Harrison, N.Y.*, 895 F. Supp. 2d 526, 535 (S.D.N.Y. 2012) (quotation omitted)).  The requirement of a policy or practice to establish *Monell* liability is also required to support a § 1983 claim against a private entity which qualifies as a state actor.  *See Melvin v. County of Westchester*, 2016 WL 1254394, at * 12 n. 7 (S.D.N.Y. Mar. 29, 2016) ("[T]he Court assumes [the defendant private entities] . . . to be state actors such that *Monell* would apply to private entities providing medical care to state inmates.  Various courts in the Second Circuit have adopted this approach. . . ." (collecting cases)).

"To survive a motion to dismiss, the plaintiff 'cannot merely allege the existence of a municipal policy or custom, but must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists.'"  *Rowles v. Doe*, 558 F.Supp.3d 66, 71 (W.D.N.Y. 2021) (quoting *Triano v. Town of Harrison, N.Y.*, 895 F. Supp. 2d 526, 535 (S.D.N.Y. 2012) (quotation omitted)).  Moreover, in addition to alleging the defendant is a state actor, "to establish municipal liability under § 1983, a

plaintiff must prove that 'action pursuant to official municipal policy' caused the alleged constitutional injury."  *Cash v. County of Erie*, 654 F.3d 324, 333 (2d Cir. 2011) (quoting *Connick v. Thompson*, 563 U.S. 51, 60 (2011).  "Absent a showing of a causal link between an official policy or custom and the plaintiffs' injury, *Monell* prohibits a finding of liability against the [municipality]."  *Batista*, 702 F.2d at 397 (citing, *inter alia*, *Monell*, at 694 n. 58).

"A plaintiff may satisfy the 'policy or custom' requirement by alleging one of the following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees."

*Id.* (quoting *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010) (citations omitted)).

"[I]n keeping with the pleading requirements imposed by *Twombly* and *Iqbal*, a plaintiff must give a factual description of such a policy, not just bald allegations that such a thing existed."  *Bess*, 2013 WL 1164919, at *2 (citing *Davis v. City of New York*, 2008 WL 2511734, at *6 (S.D.N.Y. June 19, 2008)).  *See also Rowles*, 558 F.Supp.3d at 72 (citing, *inter alia*, *Vassallo v. City of New York*, 2016 WL 6902478, at *14 (S.D.N.Y. Nov. 22, 2016) (dismissing plaintiff's inadequate medical care claim against municipal defendants, and explaining that "[t]o state there is a policy does not make it so," and "while a plaintiff need not assert the allegations in the initial complaint with a level of specificity only made possible through discovery . . . additional facts for Plaintiff's 'official

policy' *Monell* allegations are required" (internal citation omitted), and *Fleming v. City of New York*, 2019 WL 4392522, at *8 (S.D.N.Y. Aug. 27, 2019) ("Plaintiff's conclusory allegations are . . . insufficient to allege that the *Monell* Defendants have a longstanding custom, pattern, or practice of . . . being deliberately indifferent to inmates' medical needs or physical safety.")).  Simply put, "'mere allegations of a municipal custom, a practice of tolerating official misconduct, or inadequate training and/or supervision are insufficient to demonstrate the existence of such a custom unless supported by factual details.'"  *Id.* (quoting *Tieman v. City of Newburgh*, 2015 WL 1379652, at *13 (S.D.N.Y. Mar. 26, 2015), and citing *Simms v. City of New York*, 2011 WL 4543051, at *3 (E.D.N.Y. Sept. 28, 2011) (dismissing plaintiff's claim against city, which made "a scant three factual assertions, which, when read together, d[id] not amount to a plausible claim that any City policy, practice, or custom contributed to [plaintiff's] injury"), *aff'd*, 480 Fed.Appx. 627 (2d Cir. 2012)).

In the instant case, Plaintiff's allegations against SHC broadly assert that Defendants, including SHC, "deliberately ignored various warnings raised by various persons," including Plaintiff, Decedent, and Costa, that Decedent "was in need of immediate medical assistance while suffering from a serious medical condition," but that Defendants "ignored the serious medical condition and failed to act," resulting in Ingalsbe's pain, suffering and death.  Complaint ¶ 101.  Plaintiff further claims the "alleged deprivations – particularly the failure to notice the symptoms of drug intoxication and the failure to provide INGALSBE medical treatment – were 'sufficiently serious' deprivations creating a risk of 'death, degeneration, or extreme pain.'"  *Id.* ¶ 102 (quoting *Gabriel v. County of Herkimer*, 889 F.Supp. 2d 374, 393 (N.D.N.Y. 2012)).

Despite hinting at harm to Decedent allegedly resulting from some policy of Defendants, including SHC, the Complaint is completely devoid of any details supporting the existence of any policy that resulted in a constitutional deprivation; rather, Plaintiff's allegations are based on medical treatment Decedent never received without attributing such failure to any policy or custom.  *See Rowles*, 558 F.Supp.3d at 71 ("Plaintiff's factual allegations focus on treatment he received from a physician assistant and nurse, rather than on a widespread policy to deny inmates medical treatment.").  Nor does Plaintiff attribute any policy or custom to any policymaking individual.  *Id*. at 72 ("Plaintiff's claims are based on medical treatment he received or did not receive from a nurse and physician assistant, neither of whom from the allegations contained in the amended complaint appear to be policymaking individuals.").  Such allegations simply fail to support the existence of a policy or custom necessary to state a claim for a deprivation of medical care in violation of the Fourteenth Amendment Due Process Clause.

"Absent a showing of a causal link between an official policy or custom and the plaintiffs' injury, *Monell* prohibits a finding of liability against the [municipality]."  *Batista*, 702 F.2d 397 (quoting *Monell*, 436 U.S. at 694 n. 58).  "'[T]he mere invocation of the 'pattern' or 'plan' [will] not suffice without this causal link.'"  *Batista*, 702 F.2d at 397 (quoting *Black v. Stephens,* 662 F.2d 181, 189 (3d Cir.1981) (quoting *Lewis v. Hyland,* 554 F.2d 93, 98 (3d Cir.), *cert. denied,* 434 U.S. 931 (1977)), *cert. denied,* 455 U.S. 1008 (1982)).  Because the instant Complaint fails to sufficiently allege the requisite policy or custom, this requirement also is not met.

Defendant's motion therefore should be GRANTED as to the First Claim.

### 3.    Fourth Claim - Failure to Train

In support of dismissal of Plaintiff's Fourth Claim alleging § 1983 municipal liability against SHC based on a failure to train, Defendant argues that Plaintiff has failed to allege facts establishing SHC was deliberately indifferent to Decedent's constitutional rights including that SHC disregarded a known or obvious consequence of its failure to train its employees who came into contact with Plaintiff, Defendant's Memorandum at 11-12, that no allegations plausibly show an SHC agent or employee knew or should have known any inadequacy in its training would lead to constitutional violations, *id*. at 12, and that the factual allegations are limited to Defendant Sheriff.  *Id*. In opposition, Plaintiff argues the Complaint adequately alleges a custom or policy which can be established based upon a single decision or constitutional violation. Plaintiff's Response at 10.  In further support of Plaintiff's Fourth Claim, Defendant repeats that the Complaint contains only conclusory facts that an SHC agent caused a constitutional violation.  Defendant's Reply at 4.

As with Plaintiff's First Claim, Plaintiff's Fourth Claim asserts municipal liability against SHC pursuant to *Monell*, requiring the Complaint allege that the constitutional injury occurred pursuant to an official policy or custom and a causal link between such custom or policy and the plaintiff's injury.  *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998) (for a municipality to be liable under *Monell* for a constitutional violation, the plaintiff must establish that "the violation of his constitutional right resulted from a municipal custom or policy.") (quotation marks omitted); *Batista*, 702 F.2d at 397 (citing *Monell, supra,* 436 U.S. at 694 & n. 58).  "'In limited circumstances, a local government's decision not to train [or supervise] [its] employees [with respect to] their legal duty to

avoid violating citizens' rights may rise to the level of an official government policy for purposes of [liability under] § 1983.'"  *Hernandez v. United States*, 939 F.3d 191, 207 (2d Cir. 2019) (brackets in *Hernandez*) (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)).

A *Monell* claim based on a failure to train has three elements.  *Jenkins v. City of New York*, 478 F.3d 76, 94 (2d Cir. 2007) (citing *Walker v. City of New York*, 974 F.2d 293, 300 (2d Cir. 2002)).  "First, the plaintiff must show that a policymaker knows 'to a moral certainty' that her employees will confront a given situation."  *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 n.10 (1989)).  "Second, the plaintiff must show that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation."  *Id.* (citing *Harris*, 489 U.S. at 390).  "'Finally, the plaintiff must show that the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights.'"  *Id.* (quoting *Walker*, 974 F.2d at 298).

"Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a [municipality's] 'policy or custom' that is actionable under § 1983."  *Jenkins*, 478 F.3d at 94 (quoting *Harris*, 489 U.S. at 388). "'Deliberate indifference is a stringent standard of fault.'"  *Hernandez*, 939 F.3d at 207 (quoting *Connick*, 563 U.S. at 61) (brackets omitted).  "A municipality is deliberately indifferent where it fails to act when it has 'actual or constructive notice,' generally from '[a] pattern of similar constitutional violations by untrained employees,' that its training program is 'deficient.'"  *Id.* (quoting *Connick*, 563 U.S. at 61).  "A plaintiff, therefore,

33

'must demonstrate that the municipal action was taken with deliberate indifference as to its known or obvious consequences.  A showing of simple or even heightened negligence will not suffice.'"  *Id*. (quoting *Outlaw v. City of Hartford*, 884 F.3d 351, 373 (2d Cir. 2018) (internal quotations marks and alterations omitted)).

Further, "'for liability to attach in this circumstance the identified deficiency in a [municipality's] training program must be closely related to the ultimate injury,'" *Hernandez*, 939 F.3d at 207 (quoting *Harris*, 489 U.S. at 391), and "[a]llegations that the injury could have been avoided with 'better or more training' are not sufficient."  *Id*. (quoting *Harris*, 489 U.S. at 391).  The paramount question "is whether 'the injury could have been avoided had the employee been trained under a program that was not deficient in the identified respect.'"  *Id.* (quoting *Harris*, 489 U.S. at 391).  Moreover, for *Monell* liability to attach, the municipality's policy must be "the moving force behind the constitutional violation."  *Connick*, 563 U.S. at 61.  Notably, "[a] pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train."  *Id.* at 62 (quotation marks omitted).  At the pleading stage, the plaintiff must allege facts "tending to support, at least circumstantially, an inference that such a municipal policy or custom exists, or that Defendants lacked a policy, or that Defendants inadequately trained its [employees]."  *Miller v. County of Monroe*, 2013 WL 2180738, at * 10 (W.D.N.Y. May 17, 2013).

Here, Plaintiff has failed to state a § 1983 failure to train claim for several reasons.  First, the Complaint alleges none of the three elements to establish a policy or custom as articulated above, Discussion, *supra*, at 33, for *Monell* liability based on failure to train in violation of § 1983.  Second, as Defendant argues, Defendant's

Memorandum at 12, the only Defendant who is alleged to have failed to train any employees is Defendant Sheriff.  Specifically, a single paragraph of the Complaint, ¶ 125, alleges Defendant Sheriff knew that failure to implement training of "deputies, officers, members, medical staff, and personnel, etc.," regarding "assessing and extinguishing mental health crisis, or otherwise obtaining mental health treatment or detoxification aids for citizens prior to supplying them with a[n] ECHC cell, caused the deprivation of Decedent's constitutional rights . . .," and that Defendant Sheriff's "failure to train is so closely related to the deprivation of the Plaintiff's decedent, INGALSBE's right as to be the moving force that caused the ultimate injury."  *Id*.  Not only is there no alleged pattern of similar constitutional violations as is ordinarily required, *Connick*, 563 U.S. at 62, but the Complaint is also devoid of any allegation attributing any unconstitutional action to an SHC employee such that there is no alleged contact with Ingalsbe by such an employee as required.  *Connick*, 563 U.S. at 61.  Nor is any policymaker alleged to have failed to act in the face of "'actual or constructive notice'" of unconstitutional deprivations.  *Hernandez*, 939 F.3d at 207 (quoting *Connick*, 563 U.S. at 61).

Accordingly, Defendant's motion should be GRANTED as to the Fouth Claim.

### 4.    Fifth Claim - Interference with Familial Relationship

Plaintiff's Fifth Claim alleges Defendants engaged in action so egregious as to shock the conscience by which Plaintiff and Decedent's children were deprived of their constitutional right to a familial relationship with Plaintiff in violation of substantive due process under the Fourteenth Amendment.  Complaint, Fifth Claim.  In support of dismissal, Defendant argues Plaintiff fails to allege that SHC's actions were intended to

interfere with familial relationships as required for such claim. Defendant's Memorandum at 13-14. Plaintiff does not directly argue in opposition to dismissal of the Fifth Claim, nor does Defendant argue in further support of it.

"'Historically, th[e] guarantee of due process has been applied to *deliberate* decisions of government officials to deprive a person of life, liberty, or property.'" *Gorman v. Rensselaer County*, 910 F.3d 40, 47–48 (2d Cir. 2018) (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986) (collecting cases) (emphasis in *Daniels*). "'[T]he Supreme Court has never extended the constitutionally protected liberty interest incorporated by the Fourteenth Amendment due process clause to encompass deprivations resulting from governmental actions affecting the family only incidentally. . . .'" *Id*. at 48 (quoting *Shaw v. Stroud*, 13 F.3d 791, 805 (4th Cir. 1994)). "Based on the Supreme Court's directive that only deliberate conduct implicates due process," the Second Circuit holds that "a claim under the Due Process Clause for infringement of the right to familial associations requires the allegation that state action was specifically intended to interfere with the family relationship." *Id*.

"The right to intimate association protects the close ties between individuals from inappropriate interference by the power of the state." *Chi Iota Colony of Alpha Epsilon Phi Fraternity v. C.U.N.Y.*, 502 F.3d 136, 143 (2d Cir. 2007). "Constitutional protection for associational interests are at their apogee when close family relationships are at issue." *Patel v. Searles*, 305 F.3d 130, 137 (2d Cir. 2002). The "parent/child relationship ... [is] among the most intimate ... and warrant[s] the highest level of constitutional protection." *Id*. at 136. "To state a claim for infringement of this right, a plaintiff must allege conduct so shocking, arbitrary, and egregious that the Due Process

Clause would not countenance it even were it accompanied by full procedural protection." *Lara-Grimaldi v. Cnty. of Putnam*, 2019 WL 3499543, at *3 (S.D.N.Y. Aug. 1, 2019). Further, "because only deliberate conduct implicates due process, a plaintiff must allege that the state action was specifically intended to interfere *with the family relationship.*" *Id.* (emphasis in original).

Here, as Defendant argues, Defendant's Memorandum at 13-14, the Complaint is devoid of any allegation that actions by an agent or employee of SHC were intended to interfere with the familial relationship between Plaintiff and Decedent, or between Decedent and Decedent's children as required. *Lara-Grimaldi*, 2019 WL 3499543, at ** 3-4. Accordingly, Defendant's motion should be GRANTED with regard to the Fifth Claim.

### B.    State Law Claims

Plaintiff's Third and Sixth Claims, respectively alleging negligent hiring, training, and supervision, as well as failure to treat, are asserted pursuant to New York state law ("the state law claims"). Defendant argues in support of dismissal of the state law claims that should the § 1983 claims be dismissed, then the court should decline to exercise supplemental jurisdiction over the state law claims. Defendant's Memorandum at 15. Alternatively, Defendant argues the state law claims should be dismissed as insufficiently pleaded. *Id.* at 15-18. In opposing Defendant's motion, Plaintiff does not specifically address the sufficiency of Third Claim and in further support of dismissal, Defendant comments on Plaintiff's failure to respond, Defendant's Reply at 7, and relies in support of the Sixth Claim on Decedent's medical records which are attached to and incorporated by reference into the Complaint. Plaintiff's Response at 6. In further

support of dismissal, Defendant argues the state law claim for failure to treat is duplicative of the First Claim alleging inadequate medical treatment under § 1983, nor has Plaintiff stated a claim for medical malpractice.

### 1.    Supplemental Jurisdiction

Pursuant to 28 U.S.C. § 1367(a) ("§ 1367___"), "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. . . ."  Relevantly, § 1367 provides "[t]he district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ."  28 U.S.C. § 1367(c)(3).  Although district courts have discretion whether to decline to exercise supplemental jurisdiction over claims remaining after the dismissal of all claims over which there is original jurisdiction, the Second Circuit instructs "that 'in the usual case in which all federal-law claims are eliminated before trial, the balance of factors will point toward declining to exercise jurisdiction over the remaining state-law claims.'"  *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (ellipsis omitted) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).  The relevant factors to be considered include "the traditional 'values of judicial economy, convenience, fairness, and comity.'"  *Id.* (quoting *Cohill*, 484 U.S. at 350).  Further, "[i]n the absence of a clearly articulated federal interest and without any other consideration of the *Cohill* factors," a district court exceeds its discretion by exercising supplemental jurisdiction.  *Id.*, 455 F.3d at 123.

The instant case does not present the "usual case" where all federal claims are "eliminated on a motion to dismiss, prior to the investment of significant judicial resources." *Kolari*, 455 F.3d at 123-24. Rather, assuming the District Judge agrees with the undersigned's recommendation that the federal claims asserted against SHC should be dismissed, the action will proceed against the remaining Defendants who have not moved to dismiss, and as against whom the same federal and state law claims are asserted. Accordingly, the court should not decline to exercise supplemental jurisdiction over Plaintiff's state law claims at this stage of the proceedings.

### 2. Third Claim - Negligent Hiring, Training, and Supervision

In the Third Claim, Plaintiff asserts under New York law a claim for negligent hiring, training and supervision, alleging Defendant Sheriff should have known that all Defendants, including SHC, have a "propensity for and history of the conduct causing injury prior to the occurrence on the date of incident, including false arrest, unlawful detention, and false imprisonment, and additional negligent acts described above, and negligently trained and hired said Defendants to the positions of employment." Complaint ¶ 118. In opposing Defendant's motion, Plaintiff does not specifically address the sufficiency of Third Claim and in further support of dismissal, Defendant comments on Plaintiff's failure to respond. Defendant's Reply at 7.

To state a claim under New York state law for negligent hiring, training, or supervision of employees, a plaintiff must first allege a *prima facie* case of negligence under New York law. *D.J. by Comfort v. Corning-Painted Post Area School District*, 2024 WL 989703, at * 11 (W.D.N.Y. Mar. 7, 2024) (citing *AA by BB v. Hammondsport Cent. Sch. Dist.*, 527 F. Supp. 3d 501, 508 (W.D.N.Y. 2021). "To establish a prima facie

case of negligence under New York law, "a plaintiff must demonstrate (1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom.'" *Id.* (quoting *Crout v. Haverfield Int'l, Inc.*, 269 F. Supp. 3d 90, 96 (W.D.N.Y. 2017) (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 286 (2d Cir. 2006))). Once the elements of a negligence claim are stated, then to state a claim for negligent supervision, hiring, training or retention of employees, a plaintiff must allege, in addition to the usual elements of negligence, that the defendant employer 'knew of [an] employee's propensity to commit the alleged acts or that defendant should have known of such propensity had it conducted an adequate hiring procedure.'" *AA by BB v. Hammondsport Cent. Sch. Dist.*, 527 F. Supp.3d 501, 508 (W.D.N.Y. 2021) (quoting *N.U. v. East Islip Union Free Sch. Dist.*, 2017 WL 10456860 at *16 (E.D.N.Y. 2017)). Moreover, "the employee's actions must have been outside the scope of employment." *D.J. by Comfort*, 2024 WL 989703, at * 11 (citing *AA by BB*, 527 F. Supp.3d at 508). *See also Gurevich v. City of New York,* 2008 WL 113775, at *6 (S.D.N.Y. Jan. 10, 2008) (to maintain a claim against a municipal employer for the "negligent hiring, training, and retention" of an employee tortfeasor under New York law, a plaintiff must show that the employee acted "outside the scope of her employment.") (internal quotation marks omitted) (collecting cases).

In the instant case, Plaintiff specifically alleges that the tortious acts on which this claim is predicated "were committed <u>within</u> <u>the</u> <u>scope</u> and/or during the time of their employment . . . ." Complaint, ¶ 119 (underlining added). Because a state law claim for negligent hiring, training, and supervision requires that the employee acted outside the

scope of employment, *D.J. by Comfort*, 2024 WL 989703, at * 11, Plaintiff has pleaded herself out of such claim.

Alternatively, the Complaint's only allegation pertaining to hiring, training and supervision is directed solely toward Defendant Sheriff, not SHC.  *See* Complaint ¶ 118 ("Upon information and belief, Defendant Sheriff HOWARD employed . . . . . SHC . . . .").  The Third Claim thus also fails on this ground.

As a further alternative assuming for the sake of this discussion that the Complaint sufficiently alleges the elements of negligence, as relevant here, that SHC breached a duty owed to Decedent that proximately resulted in Decedent's suicide attempt and death, *D.J. by Comfort*, 2024 WL 989703, at * 11, the Complaint utterly fails to specify that SHC knew of any propensity by any employee to commit any acts that would support liability for such breach supporting a claim that SHC was negligent in hiring, training, or supervising such employee.  Significantly, the Complaint does not identify any SHC employee or the role played by such employee in the circumstances that give rise to this action.  *AA by BB*, 527 F. Supp.3d at 508.

Accordingly, Defendant's motion should be GRANTED as to the Third Claim.

### 3.    Sixth Claim - Failure to Treat

The Sixth Claim for failure to treat is asserted under New York state law. Defendant asserts two arguments in support of dismissal of the Sixth Claim including that the claim is untimely, Defendant's Memorandum at 6-7, and is insufficiently pleaded.  *Id*. at 17-18.

### a.    Timeliness

Defendant argues Plaintiff's Sixth Claim alleging under New York common law a claim for failure to treat sounds in medical malpractice and should be dismissed as filed after the applicable two years and six months period of limitations.  Defendant's Memorandum at 6-7 (citing N.Y. C.P.L.&R. § 214-a).  In opposition, Plaintiff argues the allegations of the Complaint, liberally construed, state a plausible claim for deliberate indifference to Plaintiff's medical needs while under the care and custody of Defendants for which the statute of limitations was, by New York Executive Order No. 202.8, tolled from March 20, 2020 until November 4, 2020.   Plaintiff's Response at 6-7.  In reply, Defendant does not repeat its argument that the claim is untimely other than to note, Defendant's Reply at 8 n. 6, that the New York Court of Appeals has not addressed whether New York's COVID-19 Executive Orders tolled the statute of limitations applicable here.  Instead, Defendant argues Plaintiff's assertion that the claim sufficiently alleges "deliberate indifference" demonstrates the claim is duplicative of the First Claim for deprivation on inadequate medical care under § 1983, and the Complaint fails to allege any facts that any SHC agent or employee was responsible for providing medical treatment to Decedent or was on notice about Decedent's medical condition or cell assignment in the ECHC.  *Id*. at 8.  Defendant further maintains Plaintiff's recitation of the elements and conclusory allegations are insufficient to meet the pleading requirements for a medical malpractice claim under New York law.  *Id*.

Although a statute of limitations defense is ordinarily asserted as an affirmative defense in an answer, the Second Circuit permits the assertion of an affirmative defense to be raised in a pre-answer motion to dismiss pursuant to Rule 12(b)(6)

provided "'the defense appears on the face of the complaint.'"  *McKenna v. Wright*, 386

F.3d 432, 436 (2d Cir. 2004) (citing cases including, *inter alia*, *Ghartey v. St. John's*

*Queens Hospital*, 869 F.2d 160, 162 (2d Cir. 1989) ("Where the dates in a complaint

show that an action is barred by a statute of limitations, a defendant may raise the

affirmative defense in a pre-answer motion to dismiss.  Such a motion is properly

treated as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief

can be granted rather than a Rule 12(b)(1) motion to dismiss for lack of jurisdiction over

the subject matter.")).  Accordingly, the court considers on the instant motion to dismiss

pursuant to Rule 12(b)(6) whether the Sixth Claim is time-barred based on the face of

the Complaint.

New York's rules for tolling statutes of limitations apply in federal district court.

*Board of Regents of Univ. of State of New York v. Tomanio*, 446 U.S. 478, 483 (1980)

(federal courts are obligated to apply not only analogous New York statutes of

limitations to federal constitutional claims, but also New York's rules for tolling such

statutes).  Beginning March 20, 2020, then New York Governor Andrew Cuomo issued

Executive Order 202.8, 9 N.Y.C.R.R. § 8.202.8, declaring a state of emergency based

on the COVID-19 pandemic, which, *inter alia*, "toll[ed] the time limits for filing legal

actions as prescribed by the state's procedural laws."  *Bonilla v. City of New York*, 2020

WL 6637214, at * 1 (E.D.N.Y. Nov. 12, 2020).  The initial COVID-19 Executive Order toll

expired on April 19, 2020, but a series of nine additional Executive Orders extended the

toll to November 4, 2020 (together, "the COVID-19 Executive Orders").[9]  *Cain v. County*

*of Niagara, New York*, 2022 WL 616795, at *5 & n. 4 (W.D.N.Y. Mar. 2, 2022).  This

---

[9] *See* 9 N.Y.C.R.R. §§ 8.202.14, 8.202.28, 8.202.38, 8.202.48. 8.202.55, 8.202.55.1, 8.202.60, 8.202.63, and 8.202.67.

court has recognized that the COVID-19 Executive Orders tolled statutes of limitations based on an inability to commence actions in state courts, *Cain*, 2022 WL 616795, at *5 (W.D.N.Y. Mar. 2, 2022), and also applies to federal cases, *id*. at * 6 (W.D.N.Y. Mar. 2, 2022) (citing *Bonilla*, 2020 WL 6637214, at * 1, and *Citi Connect, LLC v. Local Union No. 3*, 2020 WL 5940143, at ** 3-4 (S.D.N.Y. Oct. 7, 2020)), even though federal courts, including the Western District of New York, remained open for filing actions during most of the pandemic.  *Id*.  *But see Johnston v. City of Syracuse*, 2021 WL 3930703, at * 5-6 (N.D.N.Y. Sept. 2, 2021) (recognizing the COVID-19 Executive Orders were intended to toll, rather than to merely suspend, statutes of limitation, but questioning whether the Governor had authority to do so, yet failing to decide the question by declining to exercise supplemental jurisdiction over the New York law claims).

Accordingly, the two years and six months limitations period applicable to Plaintiff's common law failure to treat claim, asserted as a medical malpractice claim, would have elapsed pursuant to N.Y. C.P.L.P. § 214-a, at the latest if measured from Decedent's death on October 12, 2019, as of April 12, 2022.  The tolling from March 20, 2020 to November 4, 2020 pursuant to the COVID-19 Executive Orders, however, provided an additional 229 days for Plaintiff to file the instant action, thereby extending the April 12, 2022 deadline to November 27, 2022, such that Plaintiff's filing of the Complaint asserting Plaintiff's Sixth Claim on October 10, 2022 was timely.[10]

Defendant's motion should be DENIED as to the argument that Plaintiff's Sixth Claim is time-barred.

---

[10] Even if the medical malpractice claim accrued upon Decedent's admission to ECHC on October 10, 2022, when Decedent allegedly was given an incorrect cell assignment in light of his fragile mental health based on alleged drug use, an issue the court need not resolve here, the claim is still timely.

####    b.    Pleading Suffciency

In addition to arguing the Sixth Claim should be dismissed as time-barred, Defendant also argues Plaintiff fails to allege sufficient facts to plausibly show SHC owed a duty to Decedent and then breached such duty, Defendant's Memorandum at 17, or even a single fact that any SHC employee knew of Ingalsbe's presence at ECHC or was responsible for treating Ingalsbe. *Id*. at 17-18.  In opposition to dismiss, Plaintiff argues Decedent's medical records which are attached to and incorporated by reference into the Complaint as Exhibit A (Dkt. 1-1) ("Exhibit A"), indicate that Defendants, including SHC, failed to adequately address Decedent's extreme mental health risks so as to prevent Decedent's suicide attempt and eventual death while in Defendants' custody.  Plaintiff's Response at 6.  *See* Complaint ¶¶ 33-34 (incorporating into the Complaint "Exhibit A" described as "the Erie County Sheriff's Department 'Police Report Suicide Attempt,' together with Memoranda annexed thereto, concerning the suicide attempt of Plaintiff's [D]ecedent, INGALSBE on October 11, 2019.").  In further support of dismissal, Defendant argues the state law claim for failure to treat is duplicative of the First Claim alleging inadequate medical treatment under § 1983, nor has Plaintiff stated a claim for medical malpractice.

Preliminarily, the court observes the Complaint contains no factual allegations attributing any action by an agent or employee of SHC in relation to Decedent's care while housed at ECHC; rather than alleging any concrete act by any SHC agent or employee, the Complaint contains only conclusory allegations such as that Defendants, including SHC, "failed to provide adequate and essential medical evaluation and care and treatment to the plaintiff [*sic*]; they failed to address Plaintiff's decedent,

INGALSBE's serious medical and mental health needs; they acted with deliberate indifference to Plaintiff's decedent, INGALSBE, because he was in need of medical care and they failed, or refused to, [*sic*] obtain such care; they failed to protect him from health problems that were sufficiently imminent and sure or very likely to cause him serious illness and needless suffering."  Complaint ¶ 142.  As Defendant argues, Defendant's Memorandum at 17, such allegations fail to assert that any SHC agent or employee knew about Decedent's presence at ECHC, that Decedent was improperly housed in a cell on Bravo Long as opposed to in a cell in ECHC's special medical unit, or interacted with Decedent, let alone failed to treat Decedent for his condition resulting from Decedent's substance abuse.  Furthermore, insofar as Plaintiff maintains that sufficient allegations may be drawn from the Decedent's medical records that are attached to the Complaint as Exhibit A (Dkt. 1-1), Plaintiff's Response at 6, although documents attached or incorporated into a complaint by reference may be considered on a motion to dismiss, *Clark*, 89 F.4th at 93, the court is not required to scour such documents to discern what allegations the Plaintiff intends to assert based on the documents as this would violate Fed. R. Civ. P. Rules 8 ("Rule 8___") and 10 ("Rule 10___") as discussed below.

Specifically, Rule 8 provides that a pleading setting forth a claim for relief must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "The statement should be short because "'[u]necessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage.'"  *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988)

(quoting 5 C. Wright & A. Miller, *Federal Practice & Procedure* § 1281, at 365 (1969)). The purpose of Rule 8 "'is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable.'" *Hudson v. Artuz,* 1998 WL 832708, *1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank,* 162 F.R.D. 15, 16 (N.D.N.Y.1995) (other citations omitted)). Rule 8 also requires "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Although "[n]o technical form is required," each allegation of the Plaintiff "must be simple, concise, and direct." Fed. R. Civ. P. 8(d).

Additionally, Fed. R. Civ. P. 10 provides in pertinent part that:

[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense.

Fed. R. Civ. P. 10(b).

Adherence to Rules 8 and 10 provides fair notice and facilitates clear presentation of the matters set forth in the complaint. *United States v. Erie County, NY*, 724 F. Supp.2d 357, 366 (W.D.N.Y. 2010) (citing *O'Diah v. New York*, 2010 WL 786271, at *9 (N.D.N.Y. Mar. 2, 2010) (citing *Phillips v. Girdich,* 408 F.3d 124, 128 (2d Cir.2005), and *Powell v. Marine Midland Bank,* 162 F.R.D. 15, 16 (N.D.N.Y.1995))). A complaint that fails to comply with the pleading requirements of Rules 8 and 10 "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [the] claims." *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996).

Here, it is clear that Plaintiff's Sixth Claim is based on the Decedent's arrest by some Defendants and attributes the Decedent's death to actions or failures to act by other Defendants, but Plaintiff fails to set forth the specific manner in which each Defendant allegedly was involved in the events giving rise to the claims. Instead, Plaintiff merely refers the reader to Exhibit A, implying the specifics of the Sixth Claim as asserted against SHC can be gleaned from the contents of the exhibit. Plaintiff's Response at 6. This is insufficient to advise SHC of the factual basis for the asserted claims; instead, referring the court to Exhibit A leaves it to SHC (and the court) to decide what Plaintiff intends to allege against SHC, a job which belongs to Plaintiff. *See Abreu v. Brown*, 2015 WL 13828733, at ** 3-4 (W.D.N.Y. June 3, 2015) (dismissing for failure to comply with Rule 8(a), complaint and its voluminous supplement rendering it difficult to discern how each defendant was allegedly personally involved in the various claims asserted). It is significant that Exhibit A, although consisting of only 26 pages and not voluminous, not only includes portions that are illegible, see Exhibit A at 2-3, but the legible portions do not specifically identify any SHC agent or employee allegedly involved in the events on which the instant action is predicated. Defendant's motion should therefore be GRANTED on this ground.

Defendant's alternative arguments, including that the Sixth Claim is duplicative of the First Claim alleging inadequate medical treatment under § 1983, Defendant's Reply at 7-8, and construing the Sixth Claim as asserting medical malpractice is also insufficiently pleaded, *id*. at 8, were raised for the first time in Defendant's Reply. District courts may, in their discretion, ignore arguments raised for the first time in a reply. *See Woodward v. Holtzman*, 2018 WL 5112406, at * 7 (W.D.N.Y. Oct. 18, 2018)

(citing *Ruggerio v. Warner-Lambert Co.*, 424 F.3d 249, 252 (2d Cir. 2005) (district court has discretion to consider arguments made for the first time in reply memorandum)). Here, given the paucity of factual allegations supporting Plaintiff's Sixth Claim, and because Plaintiff has not had an opportunity to argue in opposition to Defendant's alternative arguments in support of dismissal of the Sixth Claim, the court, in its discretion, does not address the alternative arguments.

Defendant's motion should, therefore, be GRANTED as to the argument Plaintiff's Sixth Claim fails to plausibly state a claim.

**5.     Discovery**

Plaintiff argues that prior to determining the instant motion, Plaintiff should be permitted to conduct discovery, particularly, to take depositions of various, unidentified, Defendants. Plaintiff's Response at 11 (citing *J & J Sports Productions, Inc. v. S & S Lounge, Inc.*, 2011 WL 477681, at * 1 (E.D.N.Y. Feb. 3, 2011) ("*J & J Sports*")). In opposition, SHC argues Plaintiff is not entitled to discovery prior to the court's determination of Defendant's motion and that Plaintiff erroneously relies on *J & J Sports*. Defendant's Reply at 9-10. Plaintiff's request for discovery prior to addressing Defendant's motion is without merit.

Rule 12(b)(6) provides that an action may be dismissed prior to discovery if the operative pleading "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Significantly, "'it is axiomatic that a plaintiff must state a claim *before* he is entitled to discovery.'" *Bristol-Myers Squibb Co. v. Matrix Labs. Ltd.*, 2015 WL 4430614, at *8 (S.D.N.Y. July 20, 2015) (quoting *Haynes v. City of New York*, 2020 WL 4926178, at *18 (S.D.N.Y. Aug. 20, 2020) (emphasis in *Haynes*)). *See also*

*Bridgewater v. Taylor*, 745 F.Supp.2d 355, 358 (S.D.N.Y. 2010) ("a litigant has to state a claim before he or she is entitled to discovery."). *J & J Sports*, on which Plaintiff relies, does not support Plaintiff's argument; rather, in *J & J Sports*, the court explained that if the court were to construe a "verified motion to dismiss," filed by one of the defendants who was proceeding *pro se*, as a motion to dismiss filed pursuant to Rule 12(b)(6), the motion would have to be converted pursuant to Rule 12(d) to a motion for summary judgment because the *pro se* defendant attached to the motion exhibits for the court's consideration. *J & J Sports*, 2011 WL 477681, at * 1. Nevertheless, because the plaintiff had not had an opportunity to conduct any discovery, the court declined to convert the motion to summary judgment. *Id*. Accordingly, *J & J Sports* does not support Plaintiff's argument. Further, the court's research reveals no case supporting Plaintiff's argument.

Moreover, although "'[t]he Second Circuit has yet to articulate a standard for determining whether to allow expedited discovery[,] courts in this circuit have variously applied either the four-part test derived from *Notaro v. Koch*, 95 F.R.D. 403, 405 (S.D.N.Y. 1982) — the elements of which track the standard for granting a preliminary injunction — or the more flexible standard of reasonableness and good cause. . . .'" *R.R. Donnelley & Sons Co. v. Marino*, 505 F. Supp. 3d 194, 209 (W.D.N.Y. 2020) (quoting *Schneiderman v. Griepp*, 2017 WL 3129764, at *1 (E.D.N.Y. July 20, 2017) (citations and internal quotations omitted)). "The majority of courts in the Second Circuit apply the more flexible 'good cause' standard when evaluating motions for expedited discovery." *Id.* (citing *Ayyash v. Bank Al-Madina*, 233 F.R.D. 325, 326-27 (S.D.N.Y. 2005)). Toward that end, "in assessing good cause a court may take into account the

standard necessary to establish entitlement to a preliminary injunction, including for instance whether there is some connection between the request for expedited discovery and the avoidance of irreparable injury and any burdens associated with the expedited discovery in comparison to the potential injury to the moving party in the absence of expedited discovery." *Id.*

In the instant case, Plaintiff has not shown that expedited discovery is required to avoid irreparable injury or prejudice to her position in this action. Accordingly, Plaintiff has not met the burden for expedited discovery and the request is DENIED.

## 6.    Leave to Replead

"As a general matter, '[t]he district court has discretion whether or not to grant leave to amend, and its decision is not subject to review on appeal except for abuse of discretion. . . .'" *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) (quoting 3 *Moore's Federal Practice* ¶ 15.08 [4], at 15–64 (2d ed. 1992) (footnotes omitted), and citing *Foman v. Davis,* 371 U.S. 178, 182 (1962), and *Evans v. Syracuse City School District,* 704 F.2d 44, 47 (2d Cir. 1983)). Although in exercising such discretion, "the district court is required to heed the command of Rule 15(a) to grant leave to amend 'freely . . . when justice so requires,'" *id.* (quoting Fed.R.Civ.P. 15(a), and citing *Foman,* 371 U.S. at 182, *Ronzani v. Sanofi S.A.,* 899 F.2d 195, 198 (2d Cir.1990), and 3 *Moore's Federal Practice* ¶ 15.08[4], at 15–65), "[w]here it appears that granting leave to amend is unlikely to be productive . . . it is not an abuse of discretion to deny leave to amend. *Id.* (citing *Foman,* 371 U.S. at 182 (denial not abuse of discretion where amendment would be futile), *Health–Chem Corp. v. Baker,* 915 F.2d 805, 810 (2d Cir.1990) ("where ... there is no merit in the proposed amendments, leave

to amend should be denied"); and *Billard v. Rockwell International Corp.,* 683 F.2d 51, 57 (2d Cir.1982) (denial not abuse of discretion where plaintiff had had "access to full discovery" in a related case). *See also Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000)* (affirming dismissal of plaintiff's claim for failure to state a claim with prejudice and without leave to replead where even liberal reading of complaint failed to suggest plaintiff had merely inadequately or inartfully pleaded and plaintiff, speaking through counsel on appeal, suggested no new material that could be pleaded to sufficiently reframe claim, such that repleading would be futile). Nor does a district court abuse its disretion in denying leave to replead where the papers provide "no clue as to how the complaint's deficiencies would be cured." *Noto v. 22nd Century Group, Inc.*, 35 F.4th 95, 107 (2d Cir. 2022).

Here, the problems with Plaintiff's First, Third, Fourth, and Sixth Claims as pleaded against Defendant SHC, are not substantive such that further pleading cannot cure them and would be futile. *See Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1992) ("It is the usual practice upon granting a motion to dismiss to allow leave to replead."). Accordingly, the dismissal of Plaintiff's First, Third, Fourth, and Sixth Claims against SHC should be without prejudice and with leave to replead.

The recommended dismissal of the Fifth Claim asserting a § 1983 based on interference with familial relationships is based the Complaint's failure to allege "deliberate conduct" by any SHC agent or employee implicating due process, to wit, a specific intention "to interfere *with the family relationship.*" *Lara-Grimaldi*, 2019 WL 3499543, at *3 (emphasis in original). Significantly, because Plaintiff failed to respond in opposition to Defendant's motion to dismiss the Fifth Claim, Plaintiff's papers provide

no clue as to how the deficiencies would be cured.  *Noto*, 35 F.4th at 107 (permitting dismissal without leave to replead where the complaint and motion papers provided "no clue as to how the complaint's deficiencies would be cured.").

The dismissal of the Fifth Claim against SHC therefore should be with prejudice and without leave to replead.

## <u>CONCLUSION</u>

Based on the foregoing, Defendant's motion (Dkt. 48), should be GRANTED in part and DENIED in part.  Plaintiff's First, Third, Fourth, and Sixth Claims should be dismissed as against Defendant SHC without prejudice and with leave to replead, but Plaintiff's Fifth Claim should be dismissed with prejudice and without leave to replead.

Respectfully submitted,

/s/ *Leslie G. Foschio*

_____

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:    April 11, 2024
          Buffalo, New York

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(d) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**<u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.</u>**

*Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE


DATED:    April 11, 2024
          Buffalo, New York